UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

SIDNEY ITZKOWITZ,

                Plaintiff,

    -against-

BEST YET MARKET INC.; BEST MARKET OF GREAT NECK, INC.; LIDL US, LLC; LIDL US OPERATIONS, LLC; AVIV RAITSES in his professional and individual capacity; ERAN RAITSES in his professional and individual capacity; OR RAITSES in his professional and individual capacity; REBECCA PHILBERT in her professional and individual capacity; HEATHER BOZZA in her professional and individual capacity; JOHANNES FEIBER in his professional and individual capacity,

                Defendants.

Civil Action No.   20-cv-5883

COMPLAINT

------------------------------------------------------------------X

    Plaintiff SIDNEY ITZKOWITZ, by and through his attorneys, Sokoloff Stern LLP, brings this Complaint and states as follows:

## PRELIMINARY STATEMENT

    1.    Plaintiff SIDNEY ITZKOWITZ ("Mr. Itzkowitz" or "Plaintiff") brings this action to be compensated for: unpaid overtime wages owed; unpaid spread of hours wages owed; liquidated damages for failing to pay overtime wages and spread of hours owed; liquidated damages for failing to furnish a correct wage notice and acknowledgment form and correct wage statements; attorneys' fees; pre-judgment interest; and the costs and disbursements of this action.

1

2. Plaintiff seeks to recover these damages from defendants BEST YET MARKET, INC (d/b/a Best Market), BEST MARKET OF GREAT NECK, INC. (d/b/a Best Market), LIDL US, LLC (d/b/a LIDL), and LIDL US OPERATIONS, LLC (d/b/a LIDL), which entities have been owned, operated, and/or managed by AVIV RAITSES, ERAN RAITSES, OR RAITSES, REBECCA PHILBERT, HEATHER BOZZA, and/or JOHANNES FEIBER (hereinafter referred to collectively as "Defendants") during Plaintiff's period of employment at the Best Market supermarket located at 40 Great Neck Road, Great Neck, New York.

3. Since Plaintiff started his employment with Best Market approximately three years ago, Defendants knowingly and willfully failed to pay him overtime and spread of hours premiums required by law.

4. Since Plaintiff started his employment with Best Market approximately three years ago, Defendants failed to provide and/or ensure the provision of documents complying with the provisions of the Wage Theft Prevention Act.

## NATURE OF THE ACTION

5. This is an action seeking, in part, to recover for Defendants' failure to provide Plaintiff with overtime compensation and spread of hours compensation owed under the Federal Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL") and for violations of the New York Wage Theft Prevention Act ("WTPA").

## JURISDICTION AND VENUE

6. Jurisdiction is obtained over Defendants under 28 U.S.C. § 1331 because Plaintiff brings claims under a federal statute, the Federal Labor Standards Act, 29 U.S.C. § 201 *et seq.*

7. Venue is proper in this Court because a substantial part of the underlying events occurred in this judicial district.

## PARTIES

8. Plaintiff resides in Woodmere, New York.

9. Since October 2017, Plaintiff has been employed as a baker at the Best Market supermarket located at 40 Great Neck Road, Great Neck, New York.

10. Plaintiff remains employed as a baker at the Best Market supermarket located at 40 Great Neck Road, Great Neck, New York.

11. Defendant BEST YET MARKET, INC. is a domestic corporation organized and existing under the laws of the State of New York, has a principal place of business at 1 Lexington Ave., Bethpage, NY 11714, and has been doing business under the trade name "Best Market."

12. Defendant BEST YET MARKET, INC. has owned the Best Market supermarket located at 40 Great Neck Road, Great Neck, New York during some or all of the period of Plaintiff's employment there.

13. Defendant BEST YET MARKET, INC. has operated the Best Market supermarket located at 40 Great Neck Road, Great Neck, New York during some or all of the period of Plaintiff's employment there.

14. Defendant BEST YET MARKET, INC. has managed the Best Market supermarket located at 40 Great Neck Road, Great Neck, New York during some or all of the period of Plaintiff's employment there.

15. Upon information and belief, starting in or about 1994 Ben Raitses opened supermarkets under the name of Produce Warehouse.

16. Upon information and belief, starting in or about 2002, the Produce Warehouse supermarkets were renamed as Best Yet Market supermarkets.

17. Upon information and belief, starting in or about 2012, the Best Yet Market supermarkets were renamed as Best Market supermarkets.

18. Upon information and belief, starting in or about 2012 and continuing through at least November of 2018, members of the Raitses family have owned and operated supermarkets throughout Long Island under the trade names Best Yet Market and Best Market.

19. Upon information and belief, defendant AVIV RAITSES is the President and co-owner of BEST YET MARKET, INC.

20. Upon information and belief, defendant ERAN RAITSES is the co-owner of BEST YET MARKET, INC.

21. Upon information and belief, defendants AVIV RAITSES and ERAN RAITSES are the sons of Ben Raitses.

22. Upon information and belief, defendant OR RAITSES is the Vice President and General Counsel of BEST YET MARKET, INC.

23. Defendant BEST MARKET OF GREAT NECK, INC. is a domestic corporation organized and existing under the laws of the State of New York, has a principal place of business at 1 Lexington Ave., Bethpage, NY 11714, and has been doing business under the trade name "Best Market."

24. Upon information and belief, defendants AVIV RAITSES, ERAN RAITSES, and/or OR RAITSES are or have been officers, directors, and or employees of defendant BEST MARKET OF GREAT NECK, INC. during some or all of Plaintiff's employment at the Best Market supermarket located at 40 Great Neck Road, Great Neck, NY.

25. Upon information and belief, during some or all of Plaintiff's employment, defendant BEST YET MARKET, INC. owned, operated, and/or managed the Best Market supermarket located at 40 Great Neck Road, Great Neck, New York.

26. Upon information and belief, during some or all of Plaintiff's employment, defendant BEST MARKET OF GREAT NECK, INC. owned, operated, and/or managed the Best Market supermarket located at 40 Great Neck Road, Great Neck, New York.

27. Upon information and belief, at the time of Plaintiff's hire, defendants AVIV RAITSES, ERAN RAITSES, and OR RAITSES owned, operated, and/or managed the Best Market supermarket located at 40 Great Neck Road, Great Neck, New York.

28. Upon information and belief, defendants AVIV RAITSES, ERAN RAITSES, and OR RAITSES continued to own and/or operate the Best Market located at 40 Great Neck Road, Great Neck, New York at least through the time of the sale of the business in or about November 2018, and may have continued to operate or manage it after that date.

29. Upon information and belief, Defendant LIDL US, LLC is a foreign limited liability company and is doing business in the State of New York as Lidl.

30. Upon information and belief, Defendant LIDL US OPERATIONS, LLC is a foreign limited liability company and is doing business in the State of New York as Lidl.

31. Upon information and belief, in or about November 2018, defendants LIDL US, LLC and/or LIDL US OPERATIONS, LLC acquired approximately 27 Best Market supermarkets, including the Best Market supermarket where Plaintiff works in Great Neck, New York.

32. Upon information and belief, since on or about the November 2018 acquisition, defendants LIDL US, LLC and/or LIDL US OPERATIONS, LLC have owned, operated, and/or managed the Best Market supermarket where Plaintiff works in Great Neck, New York.

5

33. Upon information and belief, Defendant REBECCA PHILBERT is the Chief Executive Officer of BEST YET MARKET, INC., and may have obtained a comparable position for LIDL following the sale of the supermarkets.

34. Upon information and belief, Defendant REBECCA PHILBERT is the Chief Executive Officer of BEST MARKET OF GREAT NECK, INC., and may have obtained a comparable position for LIDL following the sale of the supermarkets.

35. Upon information and belief, Defendant HEATHER BOZZA is the Vice President of Human Resources of BEST YET MARKET, INC. and may have obtained a comparable position for LIDL following the sale of the supermarkets.

36. Upon information and belief, Defendant HEATHER BOZZA is the Vice President of Human Resources of BEST MARKET OF GREAT NECK, INC. and may have obtained a comparable position for LIDL following the sale of the supermarkets.

37. Upon information and belief, Defendant JOHANNES FEIBER is the President and Chief Executive Officer of Lidl US, LLC.

38. Upon information and belief, the individual defendants are officers, own, are majority shareholders, agents of, have active control of, have operational control of, manage, have the power to establish the wages of the employees of, set the work records of, maintain the employee records of, regulate, act directly and indirectly for one or more of the corporate defendants during the relevant time period, hire and fire employees thereof, and exercise sufficient control of the day-to-day operations of plaintiff's employment so as to be an "employer" under the FLSA 29 U.S.C. Section 203(d) and NY Labor Law (Section 190(3)).

**FACTUAL ALLEGATIONS**

**Mr. Itzkowitz's Background**

39. Mr. Itzkowitz grew up working in his family's baking business. For years before his employment at Best Market, he baked Kosher bakery goods for a living.

40. Mr. Itzkowitz expanded his family business and, in 2002, started Cinderella Sweets, LLC in Far Rockaway, New York. The company produced both traditional and Passover bakery goods under the name Shabtai.

41. Mr. Itzkowitz sold Passover products to the Best Market supermarkets.

42. Mr. Itzkowitz's exceptional baking skills have been widely recognized. In 2006, 2007, 2008, and 2010, Mr. Itzkowitz received awards for Best New Passover Product and Best New Dessert, Candies, Cookies, Cracker awards from Kosherfest, the world's largest business-to-business trade show for the kosher foods industry.

**The Bay Shore Facility**

43. Mr. Itzkowitz operated his baking business until Hurricane Sandy destroyed its facility in late 2012. Mr. Itkowitz tried to salvage the operation, but thereafter stopped working in the baking industry for the first time in his adult life.

44. In 2016, Mr. Itkowitz was contemplating his options on re-opening his business. At the same time, Aviv Raitses of Best Market connected with him and proposed a business arrangement to open a baking facility in Bay Shore, New York (the "Bay Shore facility").

45. Best Market's intention to operate out of the Bay Shore facility received a formal announcement from Governor Cuomo and received media attention on line.

46. Valuing Mr. Itzkowitz's extensive experience in managing a baking facility and exceptional baking skills, Aviv Raitses asked Mr. Itzkowitz to start as a consultant to the proposed Bay Shore facility for at least 6 months.

47. On December 1, 2016, Aviv and Or Raitses sent an agreement to Mr. Itzkowitz regarding the consultant position.

48. As a consultant, Mr. Itzkowitz advised Mr. Raitses on the layout of the facility and its equipment needs.

49. Mr. Itzkowitz performed a tremendous amount of work by helping design a detailed layout for operations and identifying equipment needed for the facility.

50. The proposal was to establish a long-term business partnership as Mr. Itzkowitz and Mr. Raitses engaged in a discussion of a long-term business partnership to own and operate the Bay Shore facility.

51. On the same day Aviv and Or Raitses provided the consultant agreement, they also drafted a letter to Mr. Itzkowitz and expressed a clear and unambiguous promise to enter a joint-venture agreement.

52. The letter provided that Aviv and Or Raitses were "very excited at the prospect of working with [Mr. and Mrs. Itzkowitz] on our immediate needs to improve our company. This letter is intended to be an outline of agreeable terms for which we can begin to develop a joint venture."

53. The letter established the terms of the joint venture. Together, they will "design, build and operate a manufacturing facility at our warehouse location for manufacture of Gluten Free and Passover Baked goods, under the Shabtai Gourmet label."

54. Regarding the ownership of the joint venture, the letter showed that Mr. Itzkowitz, or the entity of his choice would be a 50% owner.

55. The letter also indicated further negotiations would be conducted as to the operations of the joint venture.

56. While the Bay Shore facility was still in the planning and construction phases, Avi Raitses asked Mr. Itzkowitz to work as a baker at the Best Market store in Great Neck. Mr. Itzkowitz accepted the position at Best Market and started to work as a baker in the store in October 2017.

57. When Mr. Itzkowitz started working at the Great Neck store, he was under the reasonable impression the job was only temporary and eventually he would be a part owner of the joint venture once the Bay Shore facility was finished.

58. Best Market re-named the Great Neck store's bakery department as "Sid the Baker" and marketed Mr. Itzkowitz's goods.

59. Best Market relied on Plaintiff's name in the community to establish a brand name, with no additional compensation to Mr. Itzkowitz.

60. At the time, Mr. Itzkowitz believed Best Market and its owners were seeking to expand the clientele base for the upcoming joint venture at the Bay Shore facility.

61. In 2018, he participated in the meetings at Best Market's office in Bethpage, New York, to discuss construction and planning details of the Bay Shore facility with, among others, an architect, contractor, engineer, and permit expediter. Again, he did not receive additional compensation.

62. However, near the end of 2018, the planning and construction of the Bay Shore facility halted as, upon information and belief, Lidl started the acquisition of the Best Market supermarkets.

63. Since then, no one from either Best Market or Lidl has mentioned the Bay Shore facility plan to Mr. Itzkowitz.

64. While not seeking compensation for it in this action, Mr. Itzkowitz has suffered injury for loss of business opportunities while reasonably relying on Aviv and Or Raitses' promises as to the joint venture while the Bay Shore facility construction was underway. Mr. Itzkowitz had been seeking business opportunities to build a baking facility after Hurricane Sandy.

65. Plaintiff's skills and reputation are of a level that Defendants have sought to, and continue to, capitalize on them over the last few years without paying him compensation as required by law.

**The Failure to Pay Overtime Compensation**

66. In October of 2017, Mr. Itzkowitz was hired to work as a baker at the Best Market supermarket in Great Neck, New York.

67. While working at the Great Neck store, Mr. Itzkowitz has been producing Kosher baked goods, including, but not limited to, challah, babka, rainbow cookies, seven layer, cakes, chocolate and jelly rolls.

68. Mr. Itzkowitz, by himself, produced all the baked goods from scratch.

69. Best Market provided a misguiding job title of Bakery Team Leader. But Mr. Itzkowitz has no team to lead. There are other workers in the bakery section, and they do not assist or work with Mr. Itzkowitz in his daily activities.

70. The bakery section of the Great Neck store sells two types of bakery products: 1) frozen finished or ready to bake products that Best Market purchases from outside vendors; and 2) the fresh products Mr. Itzkowitz bakes on site at the Great Neck store. The other workers in the bakery section only prepare the frozen finished and bake-off products.

71. Mr. Itzkowitz does not possess the power to hire or fire, set wages, oversee others, or perform those other functions associated with a managerial exemption under the wage and hour laws.

72. Throughout his employment, Defendants fail to pay Mr. Itzkowitz overtime compensation for those hours he worked over 40 hours per week in violation of the FLSA and the NYLL.

73. From 2017 to the present, Mr. Itzkowitz has been consistently working over 10 hours a day and over 40 hours every work week.

74. On a typical work day from Monday to Thursday, Mr. Itzkowitz works from approximately 5:30 AM to 4:00 PM, for a total of about 10 ½ hours per day, skipping any lunch break due to the demands of his position and his dedication to putting out exceptional quality products.

75. On an average of one or two days per week, Mr. Itzkowitz has to work over 11 hours a day to meet the product demand.

76. On Fridays, Mr. Itzkowitz occasionally has to start working even earlier, around 4:30 AM, so he can guarantee the products are available for sale to the kosher clientele well before sundown, when the Sabbath begins. Because Mr. Itzkowitz has to manage the whole baking process all by himself, the schedule is particularly grueling.

77. Throughout his employment, Mr. Itzkowitz has received paid a flat, fixed salary every week, regardless how many hours Mr. Itzkowitz actually worked.

78. Defendants have put out employee weekly work schedules that regularly assign Plaintiff to work 6 AM to 4 PM from Monday to Friday each week, for a total of 50 hours.

79. Defendants are aware, or reasonably should have been aware, that Plaintiff worked and needed to work more than 40 hours per week to complete his work.

80. Mr. Itzkowitz does not work on Saturday, but every now and then has to work on Sundays.

81. On an average, Plaintiff worked over 50 hours per week during his employment. Only when he realized the Bay Shore project would not happen with him involved, did he limit his work hours to approximately 47.5 hours per week which took into account 2.5 hours per week in meal breaks which he was entitled to by law, but could never take due to the demands of his job.

82. Upon his hire in 2017, for each work week, Defendants paid Mr. Itzkowitz a fixed weekly amount of $1,500.00.

83. In 2018, for each work week, Defendants paid Mr. Itzkowitz a fixed weekly amount of $1,750.00 for a claimed 50 hours of work at an hourly rate of $35.00.

84. The hours were inaccurate and there was no compensation for overtime over 40 hours or spread of hours pay for days worked of more than 10 hours.

85. In 2019 and the first nine months of 2020, each work week Mr. Itzkowitz received a fixed weekly amount of $1823.50 for a claimed 50 hours of work at an hourly rate of $36.47.

86. Again, the hours were inaccurate and there was no compensation for overtime over 40 hours or spread of hours pay for days worked of more than 10 hours.

87. Since September 2020, for each workweek, Mr. Itzkowitz has received a fixed weekly amount of $1,860.00 for a claimed 50 hours of work at an hourly rate of $37.20.

88. Again, the hours were inaccurate and there was no compensation for overtime over 40 hours or spread of hours pay for days worked of more than 10 hours.

89. Mr. Itzkowitz's wage statements demonstrate Defendants simply did not compensate Plaintiff accurately or in compliance with the wage and hour laws.

90. There was no agreement between Mr. Itzkowitz and Defendants that the fixed salary covers overtime or spread of hour pay nor would such an agreement be legal.

91. To the opposite, Defendants had actual knowledge that Mr. Itzkowitz was working overtime and spread of hours without lawful compensation and they willfully failed to compensate him.

92. Upon hiring Mr. Itzkowitz at the Great Neck store, Mr. Itzkowitz received a Notice and Acknowledgement of Pay Rate and Payday. The notice informed Mr. Itzkowitz that he would be paid at a weekly rate of $1,500 and an overtime rate did not apply to him.

93. Since the beginning of Mr. Itzkowitz's employment at the Great Neck store, Defendants have been assigning Mr. Itzkowitz 50 hours of work each week by posting a weekly work schedule on the store's bulletin board every week. However, Defendants are aware, or reasonably should have been aware that he worked more than that each week as Defendants failed to maintain and keep time records for Mr. Itzkowitz.

94. Defendants did not keep accurate records of the hours Mr. Itzkowitz worked and did not track whether Mr. Itzkowitz took meal periods required by law, which he rarely took and were no more than a few minutes here and there.

95. Defendants' conduct was willful as such term is defined under the applicable laws.

## **FIRST CAUSE OF ACTION**

## **FLSA – OVERTIME VIOLATION**

96. Plaintiff restates and incorporates by reference the allegations set forth in paragraphs "1" through "96" above.

97. At all times, Defendants were employers engaged in interstate commerce and/or in the production of goods for commerce as defined by the FLSA, 29 U.S.C. § 207(a), et seq.

98. At all times, Mr. Itzkowitz has been an employee of Defendants within the meaning of the FLSA.

99. At all times, the corporate defendants have had annual gross volume of sales that exceeded $500,000.00.

100. The FLSA, 29 U.S.C. § 207(a)(1) provides that compensation for hours worked in excess of forty hours per week, shall be compensated at "a rate not less than one and one-half times" the regular rate.

101. At all times relevant, Defendants failed to pay Mr. Itzkowitz overtime premium of one-and-half times the regular rate of his pay for each hour he has been working over 40 hours per week in violation of 29 U.S.C. § 207(a).

102. Defendants' failure to pay Mr. Itzkowitz's overtime premium is willful within the meaning of the FLSA, 29 U.S.C. § 255(a).

103. Mr. Itzkowitz is entitled to recover from Defendants his unpaid overtime premium and the equal amount in the form of liquidated damages.

104. Plaintiff seeks to recover amounts owed for 12 weeks in 2017, 52 weeks in 2018, 52 weeks in 2019, for all weeks in 2020 through the filing of this action and for all dates the improper practices continue in the future.

105. Because of Defendants' willful and unlawful conduct, Plaintiff is entitled to an award of damages, including liquidated damages, in an amount to be determined at trial, pre- and post-judgment interest, costs and attorneys' fees, as provided by the FLSA and NYLL.

## SECOND CAUSE OF ACTION

## NYLL—OVERTIME VIOLATION

106. Plaintiff restates and incorporates by reference the allegations set forth in paragraphs "1" through "106" above.

107. At all times, Mr. Itzkowitz has been an employee of the Defendants within the meaning of NYLL §§ 2 and 651, et seq.

108. Defendants failed to pay Mr. Itzkowitz overtime premiums for all hours worked in excess of 40 hours per week in violation of N.Y. Labor Law § 232.

109. Defendants' failure to pay overtime premiums was willful within the meaning of N.Y. Labor Law §§ 663(1) and 198 (1-a).

110. Mr. Itzkowitz is entitled to recover from Defendants, joint and severally, his unpaid overtime premiums and an equal amount in the form of liquidated damages.

111. Plaintiff seeks to recover amounts owed for 12 weeks in 2017, 52 weeks in 2018, 52 weeks in 2019, for all weeks in 2020 through the filing of this action and for all dates the improper practices continue in the future.

112. Because of Defendants' willful and unlawful conduct, Plaintiff is entitled to an award of damages, including liquidated damages, in an amount to be determined at trial, pre- and post-judgment interest, costs and attorneys' fees, as provided by the FLSA and NYLL.

## THIRD CAUSE OF ACTION

## SPREAD OF HOURS- NYLL

113. Plaintiff restates and incorporates by reference the allegations set forth in paragraphs "1" through "113" above.

114. Plaintiff regularly had workdays that lasted over 10 hours.

115. Defendants willfully and intentionally failed to compensate Plaintiff one hour's pay at the basic New York Minimum hourly wage rate when his workday exceeded 10 hours, violating New York's spread of hours compensation regulations under 12 N.Y.C.C.R. §146-1.6.

116. Plaintiff seeks to recover amounts owed for 12 weeks in 2017, 52 weeks in 2018, 52 weeks in 2019, for all weeks in 2020 through the filing of this action and for all dates the improper practices continue in the future.

117. Because of Defendants' willful and unlawful conduct, Plaintiff is entitled to an award of damages, including liquidated damages, in an amount to be determined at trial, pre- and post-judgment interest, costs and attorneys' fees, as provided by NY Labor Law § 663.

## FOURTH CAUSE OF ACTION

## WTPA-NOTICE

118. Plaintiff restates and incorporates by reference the allegations set forth in paragraphs "1" through "118" above.

119. Defendants failed to furnish to Plaintiff at the time of hiring a notice containing: the rate or rates of pay and basis thereof, and anything else required by law, in violation of NY Labor Law § 195(1) and 12 N.Y.C.R.R. § 146-2.2.

120. Due to Defendants' violation, Plaintiff is entitled to recover liquidated damages of $50 per work week that the violation occurred up to a maximum of $5,000, reasonable attorney' fees, and costs and disbursements of this action under NY Labor Law § 198(1-b).

## FIFTH CAUSE OF ACTION

## WTPA- PAY STUBS

121. Plaintiff restates and incorporates by reference the allegations set forth in paragraphs "1" through "121" above.

122. Defendants paid Plaintiff wages either check with a pay stub containing the following missing and/or willfully incorrect information: hours worked, rate of pay, overtime rate of pay, and others, violating NY Labor Law § 195(3) and 12 N.Y.C.R.R. § 146-2.3.

123. Due to Defendants' violation, Plaintiff is entitled to recover liquidated damages of $50 per work week that the violation occurred up to a maximum of $5,000, reasonable attorney' fees, and costs and disbursements of this action under NY Labor Law § 198(1-d).

## SIXTH CAUSE OF ACTION

## DECLARATORY RELIEF

124. Plaintiff restates and incorporates by reference the allegations set forth in paragraphs "1" through "124" above.

125. Plaintiff seeks a judicial determination that defendants must compensate him in accordance with the applicable overtime and spread of hours laws for all future hours worked at Best Market.

## PRAYER FOR RELIEF

126. WHEREFORE, Plaintiff respectfully seeks the following relief:

(i) An award of compensatory and liquidated damages for unpaid overtime wages owed under the FLSA and NYLL;

(ii) An award of compensatory and liquidated damages for spread of hours wages owed under the NYLL;

(iii) An award of liquidated damages for violations of the WTPA in the amount of $10,000;

(iv) An award of reasonable attorney's fees;

(v) Pre-judgment interest;

(vi) Costs and disbursements of this action;

(vii) A declaration that defendants must pay plaintiff overtime wages as required by law for all future overtime and spread of hours worked; and

(viii) Such other and further relief as the Court deems just, equitable, and proper.

## JURY TRIAL DEMANDED

127. Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff requests a trial by jury.

Dated: Carle Place, New York
December 4, 2020

Respectfully submitted,

SOKOLOFF STERN LLP
*Attorneys for Plaintiff*

_____

Adam I. Kleinberg
179 Westbury Avenue
Carle Place, New York 11514
akleinberg@sokoloffstern.com
(516) 334-4500
File No. 200167